United States District Court
Middle District of Florida
Jacksonville Division

**JONATHAN KAPRON,**

*Plaintiff,*

v.                                   NO. 3:20-cv-1056-MMH-PDB

**XING YONG SHENG, INC., ETC.,**

*Defendants.*

___

# Report and Recommendation

In this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Florida Minimum Wage Amendment ("FMWA"), § 24, Art. X of the Florida Constitution,[1] the parties move under *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Lab.*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement and dismissal with prejudice. Doc. 32.

## Background

Jonathan Kapron initiated this action in September 2020. Doc. 1. After the defendants moved to dismiss the complaint, Doc. 8, he amended the complaint, Doc. 9.

In the amended complaint, he alleges these facts. Kapron was a server at Xing Yong Sheng, Inc.'s restaurant, Crazy Sushi, from about May 27, 2019,

---

[1] The Florida Minimum Wage Act, Fla. Stat. § 448.110, provides a cause of action for a violation of the state constitutional guarantee of a minimum wage.

to about February 2, 2020. Doc. 9 ¶ 19. Jian Zhong Chen, Bin Chen, and Xin Cheng (the individual defendants) supervised Kapron and were involved in setting his hours, work schedule, wages, and terms and conditions of employment. Doc. 9 ¶¶ 22, 24, 26. The individual defendants were involved in Crazy Sushi's day-to-day operations and knew Kapron was paid below minimum wage. Doc. 9 ¶¶ 23, 25, 27.

Kapron brings claims for unpaid minimum wages against each defendant. *See* Doc. 9 at 5–12. He seeks unpaid wages and tips, liquidated damages, fees, costs, post-judgment interest under the FLSA, and pre-judgment interest under the FMWA. Doc. 9 ¶¶ 37, 44, 51, 58, 61, 64, 67, 70.

In January 2019, the defendants filed an answer, Doc. 15, which they amended shortly after, Doc. 18. The defendants acknowledge Kapron brings FLSA and FMWA claims and admit the following allegations. This Court has jurisdiction; venue is proper; Xing Yong Sheng, Inc., qualifies as an "employer" under the FLSA and FMWA; Kapron worked at Crazy Sushi from about May 27, 2019, to about February 2, 2020; Bin Chen supervised Kapron and was involved in setting his hours, work schedule, and wages; Jian Zhong Chen, Bin Chen, and Xin Cheng knew Xing Yong Sheng, Inc., was applying a tip credit against Kapron's wages; and the defendants were required to pay Kapron at least minimum wage. Doc. 18 ¶¶ 1–2, 12, 15, 19, 24, 42, 49, 56, 60, 63, 66, 69.

The defendants deny the following allegations. The individual defendants qualify as "employers" under the FLSA and FMWA; Kapron was paid below minimum wage; the defendants knowingly, willfully, and maliciously paid Kapron less than minimum wage; the defendants knowingly and willfully had a policy of not paying him wages due; Jian Zhong Chen and Xin Cheng supervised Kapron and were involved in setting his hours, work

2

schedule, wages, and terms and conditions; Jian Zhong Chen, Bin Chen, and Xin Cheng were involved in the day-to-day operations of Crazy Sushi and knew Kapron was paid below minimum wage; Jian Zhong Chen, Bin Chen, and Xin Cheng were involved in setting the terms and conditions of Kapron's employment; Kapron has fulfilled all conditions precedent to initiating this action "and/or" the conditions were waived; Crazy Sushi unlawfully availed itself of a FLSA "tip credit"; and Kapron is entitled to liquidated damages. Doc. 18 ¶¶ 15–16, 18, 20–29, 34, 37, 41, 44, 48, 51, 55, 58, 61, 64, 67, 70.

The defendants raise seventeen defenses: (1) Kapron was paid more than minimum wage every pay period; (2) Kapron is estopped from claiming he was paid below minimum wage because he never objected to wage details sent to him weekly; (3) Kapron's claims are frivolous because he "signed off on his tip income"; (4)–(5) Kapron failed to state a cause of action against any defendant; (6) the defendants are entitled to fees and costs because Kapron filed this action in bad faith, wantonly, or vexatiously; (7) Kapron failed to accurately report his cash tips, and any unreported tips should be considered in determining whether Kapron was paid below minimum wage; (8) Kapron knew how Crazy Sushi applied the tip credit and never objected; (9) Kapron failed to properly answer the Court's interrogatories; (10) the amended complaint contains "incomplete allegations";[2] (11) Kapron failed to satisfy the conditions precedent to bringing this action because he never informed the defendants of the alleged violations; (12) Kapron is unlawfully targeting Crazy Sushi by filing this action; (13)–(14) Xin Cheng and Jian Zhong Chen did not supervise Kapron, were not involved in setting his work schedule or wages, did not

---

[2]The defendants state these allegations are incomplete: the defendants "acted willfully" and "29 U.S.C. § 206 and [sic] requires that any employee covered by the FLSA be paid their minimum wages." *See* Doc. 9 ¶¶ 36, 43, 50, 57, 61, 64, 67, 33, 40, 47, 54 (quoted).

3

control Kapron's day-to-day activities, and did not decide how Kapron was paid; (15) Kapron's allegation that he was paid below minimum wage has no basis; and (16)–(17) the individual defendants are not subject to liability under the FLSA or the FMWA because they are not considered "employers" under either statute. Doc. 18 at 7–10.

In October 2020 (before the amended complaint), Kapron answered the Court's interrogatories. Doc. 6. He represents these facts. He worked as a server. Doc. 6 at 3. His regular hours fluctuated, but, on average, he worked about 35 hours a week. Doc. 6 at 3. His regular hourly rate of pay was "about $3.02 below the applicable minimum wage." Doc. 6 at 3. He is owed about $3,699.50 in wages plus tips he was not allowed to keep. Doc. 6 at 3. (He does not specify the amount allegedly owed in tips.) His employer sent him a spreadsheet of the "hours when [he] was paid." Doc. 6 at 4. He asked his employer where his "tips were going," but he does not remember when. Doc. 6 at 3–4.

In November 2020, the defendants filed a verified summary of hours worked and wages paid. Doc. 11. The summary provides this information. Kapron worked at Crazy Sushi for thirty-eight weeks. *See* Doc. 11 at 2. He was paid an hourly wage of $5.44 in 2019 and $5.54 in 2020. Doc. 11 at 1. In addition, he received tips minus four percent of "gross sales" attributed to him. Doc. 11 at 1.

In July 2021, the parties settled and filed the current motion for approval of the settlement. Doc. 32.

## Motion

The parties explain, "The parties did not enter into a written settlement agreement; the only terms of the settlement is the payment of money by the Defendants in exchange for dismissal with prejudice." Doc. 32 at 2 (emphasis omitted). The defendants agree to pay $7,249.56 for unpaid wages and $15,750.44 for attorney's fees and costs, for a total of $23,000. Doc. 32 at 2. According to the parties, the fees were negotiated separately. Doc. 32 at 2. The parties assert the settlement is an "excellent result" for Kapron because he alleges he is owed about $3,241.22 in wages (exclusive of liquidated damages, fees, and costs) and $6,482.44 with liquidated damages. Doc. 32 at 2. The additional $767.12 he is receiving under the settlement is in consideration of his claim for unpaid tips. Doc. 32 at 2.

The parties state that during discovery, they exchanged a "significant amount of information," including "large numbers of documents." Doc. 32 at 1. According to them, discovery was "challenging" because many defendants and non-party witnesses spoke only Mandarin. Doc. 32 at 2. They explain costs were incurred during the full-day deposition of Xing Yong Sheng, Inc.'s corporate representative, which required a translator. Doc. 32 at 2.

## Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages for up to two years or, if the employer intentionally violated the law, for up to three years, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food,* 679 F.2d at 1354, placed limits on the ability of private parties to settle a FLSA case, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). Parties must present their agreement to the court, and the court must scrutinize the agreement for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness may include the existence of collusion behind the settlement; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

A plaintiff cannot waive his right to liquidated damages in a FLSA settlement if there is no genuine dispute about whether he is entitled to them.

*Nall*, 723 F.3d at 1307; *see Patterson v. Acad. Fire Prot., Inc.*, No. 3:13-cv-87-MMH-JBT, 2014 WL 169812, at *5–6 (M.D. Fla. Jan. 8, 2014) (unpublished) (settlement reasonable despite absence of liquidated damages where genuine dispute existed over whether plaintiff was entitled to them and parties agreed there was no evidence to support them).

The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Besides reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel," *id.* at 352, and must "[e]nsure that no conflict has tainted the settlement," *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti*, 715 F. Supp. 2d at 1228.

## Analysis

Here, considering the parties' representations and a review of the amended complaint, the amended answer and defenses, Kapron's answers to the Court's interrogatories, the defendants' verified summary, and the motion to approve the settlement agreement, the agreement is a fair and reasonable compromise of disputed issues. Approval is warranted.

Under the settlement, Kapron is receiving $7,249.56 in wages, which, according to the parties, is more than what he alleged in wages owed ($3,241.22), even when liquidated damages are included. (In the answers to the Court's interrogatories, Kapron alleges he is owed $3,699.50 in wages. The

7

discrepancy presumably is due to later recalculation.) Considering the amount, Kapron presumably is receiving liquidated damages.

The parties are represented by counsel. There is no stated or apparent collusion. Disputed issues are present, including whether Crazy Sushi unlawfully availed itself of a tip credit. Resolving the disputes without settlement would require costly discovery and continued litigation, and Kapron would risk receiving nothing. The motion does not ask the Court to retain jurisdiction to enforce the agreement.

On attorney's fees and costs, given the parties' representation they agreed on the fees separately from the amount to Kapron, the Court need not undertake a lodestar review. *See Bonetti*, 715 F. Supp. 2d at 1228. Moreover, the fees appear reasonable considering the work completed and the nature of the discovery, including the costly deposition of Xing Yong Sheng, Inc.'s corporate representative.

## Consent

To expedite the resolution of the current motion, the parties still have an opportunity to consent to the undersigned conducting the remaining proceedings in this action, including entry of judgment and any post-judgment matters. To do so, they must jointly execute and file the consent form attached to this report and recommendation (using a single form rather than separate forms). Of course, the parties remain free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(b)(2).

8

## Recommendation

I recommend:

1. **granting** the parties' motion for approval of the settlement, Doc. 32, and approving the settlement as a fair and reasonable resolution of disputed issues;

2. **dismissing** the case with prejudice;

3. **directing** the clerk to enter judgment in favor of Kapron and against the defendants for $7,249.56 as wages and liquidated damages, and $15,750.44 for attorney's fees and costs;

4. **directing** the Clerk of Court to close the file.[3]

**Entered** in Jacksonville, Florida, on September 1, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Attachment: AO Form 85

---

[3] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.